Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART STUDY CO., LTD., <br><br> *Plaintiff* <br><br> v. <br><br> BABY TOO STORE, BEAUTIFUL CLASSICAL STORE, DONGGUAN RUI TENG GIFT CO., LTD., DONGGUAN ZHIZHE TECHNOLOGY CO., LTD, EMMABABY BEAUTIFUL BABY STORE, FOSHAN MANTIANXI BALLOON CO., LTD., FUZHOU SHENGBOLAI TRADING CO., LTD., FUZHOU SHENGFUYONG CULTURAL INDUSTRY CO., LTD., FUZHOU ZHONGFENG SPORTS PRODUCTS CO., LTD., HANGZHOU YAOYANG TECHNOLOGY CO., LTD., HEFEI TAWEIER INTERNATIONAL TRADE CO., LTD., HUAINAN YINERWO TRADING CO., LTD., HUNAN GAOQIAOYUNGOU E-COMMERCE CO., LTD., JINHUA DARREN TRADING CO., LTD., LEIXURUI BABY STORE, OURFETE OFFICIAL STORE, PARTIFABRIK STORE, PARTY&BIRTHDAY RAVE STORE, PUJIANG MAIHE INDUSTRY AND TRADE CO., LTD., SHOP910905040 STORE, SHOP911256393 STORE, SHOP911257425 STORE, SHOP911262222 STORE, | CIVIL ACTION NO. <br> 21-cv-3942 (PAC) <br><br> [~~PROPOSED~~] /PAC <br> PRELIMINARY <br> INJUNCTION ORDER |

SUZHOU DONGDONG INTERNATIONAL TRADING CO., LTD., SZFOSITE BACKDROP STORE, TAMMY BACKDROP STORE, WENZHOU CATHYLIN INTERNATIONAL TRADE CO., LTD., WENZHOU QIANXIN IMPORT AND EXPORT CO., LTD., XIAMEN PALMY IMPORT & EXPORT CO., LTD., YANGZHOU CAISHENG HANDICRAFT PRODUCT CO., LTD., YB PARTY SUPPLIES STORE, YIWU BOYI LUCKY GARMENTS FACTORY, YIWU FENGYAO GARMENT CO., LTD., YIWU KERUI GARMENT CO., LTD., YIWU PINK CHILDHOOD GARMENTS CO., LTD., YIWU QIANG RUN GARMENT FACTORY, YIWU YUEYING TRADING LTD., YIZHENG LIUJI TOWN XINCHEN TOY FACTORY and ZHANGZHOU LEEWANG IMPORT AND EXPORT CO., LTD.,

*Defendants*

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Smart** | Smart Study Co., Ltd. |
| **Defendants** | Baby Too Store, Beautiful Classical Store, Dongguan Rui Teng Gift Co., Ltd., Dongguan Zhizhe Technology Co., Ltd, Emmababy Beautiful Baby Store, Foshan Mantianxi Balloon Co., Ltd., Fuzhou Shengbolai Trading Co., Ltd., Fuzhou Shengfuyong Cultural Industry Co., Ltd., Fuzhou Zhongfeng Sports Products Co., Ltd., Hangzhou Yaoyang Technology Co., Ltd., Hefei Taweier International Trade Co., Ltd., Huainan Yinerwo Trading Co., Ltd., Hunan Gaoqiaoyungou E-Commerce Co., Ltd., Jinhua Darren Trading Co., Ltd., LeiXuRui baby Store, OURFETE Official Store, Partifabrik Store, Party&Birthday Rave Store, Pujiang Maihe Industry And Trade Co., Ltd., Shop910905040 Store, Shop911256393 Store, Shop911257425 Store, Shop911262222 Store, Suzhou Dongdong International Trading Co., Ltd., SZFOSITE Backdrop Store, Tammy Backdrop Store, Wenzhou Cathylin International Trade Co., Ltd., Wenzhou Qianxin Import And Export Co., Ltd., Xiamen Palmy Import & Export Co., Ltd., Yangzhou Caisheng Handicraft Product Co., Ltd., YB Party supplies Store, Yiwu Boyi Lucky Garments Factory, Yiwu Fengyao Garment Co., Ltd., Yiwu Kerui Garment Co., Ltd., Yiwu Pink Childhood Garments Co., Ltd., Yiwu Qiang Run Garment Factory, Yiwu Yueying Trading Ltd., Yizheng Liuji Town Xinchen Toy Factory and Zhangzhou Leewang Import And Export Co., Ltd. |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |

| | |
|---|---|
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Yang Dec.** | Declaration of Su Jeong Yang in Support of Plaintiff's Application |
| **Drangel Dec.** | Declaration of Jason M. Drangel in Support of Plaintiff's Application |
| **Baby Shark Content** | One of Smart's most successful creations, which is the Pinkfong "Baby Shark" song and viral music video with characters |
| **Baby Shark Applications** | U.S. Trademark Serial Application Nos.: 79/253,035 for registration of "BABY SHARK" for a variety of goods in Classes 41, 25, 16 and 9; 79/249,403 for registration of "PINKFONG BABY SHARK" for a variety of goods in Classes 24 and 21; 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/530,086 for registration of "BABY SHARK" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/594,141 for "PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety of goods in Class 5 |
| **Baby Shark Registrations** | U.S. Trademark Registration Nos.: 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25; 6,138,374 for **pinkfong** for a variety of goods in Class 41; and 6,021,523 for **pinkfong Baby Shark** for a variety of goods in Class 28 |
| **Baby Shark Marks** | The marks covered by the Baby Shark Registrations and Baby Shark Applications |

| Baby Shark Works | U.S. Copyright Registration Nos.: VA 2-130-856, covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy Shark; VA 2-131-983, covering Pink Fong Mascot; SR 823-609, covering Baby Shark (Sound Recording and Music); and PA 2-142-905, covering Baby Shark (Motion Picture) |
|---|---|
| Baby Shark Products | An extensive worldwide licensing program for a wide variety of consumer products such as toys, sound books, t-shirts, associated with and/or related to the Baby Shark Content |
| Counterfeit Products | Products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products |
| Infringing Listings | Defendants' listings for Counterfeit Products |
| User Accounts | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba, AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| Merchant Storefronts | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| Defendants' Assets | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| Defendants' Financial Accounts | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |

| | |
|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba, AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHERAS, Plaintiff having moved *ex parte* on May 4, 2021 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on May 5, 2021 ("TRO") which ordered Defendants to appear on May 20, 2021 at 11:00 a.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on May 14, 2021, Plaintiff filed a request for modification and extension of the TRO;

WHEREAS, on May 17, 2021, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application on each and every Defendant;

WHEREAS, the Court granted Plaintiff's request and entered an Order on May 19, 2021 extending the TRO until May 27, 2021 and rescheduling the Show Cause Hearing to May 27, 2021 at 10:15 a.m. ("May 19, 2021 Order");

WHEREAS, on May 19, 2021, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the May 19, 2021 Order on each and every Defendant;

WHEREAS, on May 27, 2021 at 10:15 a.m., Plaintiff appeared at the Show Cause Hearing, however, no Defendants appeared.

**ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil

Procedure 65 and Section 34 of the Lanham Act.

a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products or any other products bearing the Baby Shark Marks and/or Baby Shark Works and/or marks or works that are confusingly or substantially similar to, identical to and constitute a counterfeiting and/or infringement of the Baby Shark Marks and/or Baby Shark Works;

   ii. directly or indirectly infringing in any manner Plaintiff's Baby Shark Marks and/or Baby Shark Works;

   iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Baby Shark Marks and/or Baby Shark Works to identify any goods or services not authorized by Plaintiff;

   iv. using Plaintiff's Baby Shark Marks and/or Baby Shark Works or any other marks or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

   v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive

members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

vi. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

vii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

viii. knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) above and 1(b)(i) through 1(b)(ii) and 1(c)(i) below.

3

b) Accordingly, the Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

   ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

   iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) and 1(b)(i) through 1(b)(ii) above.

c) Accordingly, the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts;

   ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise

disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

  iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii), 1(b)(i) through 1(b)(ii) and 1(c)(i) through 1(c)(ii) above.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) within seven (7) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall

5

provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order, their respective officers, employees, agents, servants and attorneys and all persons in active concert or participation with any of them who receive actual notice of this Order shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control (whether located in the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

   i. account numbers;
   ii. current account balances;
   iii. any and all identifying information for Defendants and Defendants' User Accounts, including names, addresses and contact information;
   iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;
   v. any and all deposits and withdrawal during the previous year from each and every of Defendants' Financial Accounts and any and all supporting documentation,

including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements;

vi. any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

vii. any and all User Accounts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts that Defendants have ever had and/or currently maintain;

viii. the identities, location and contact information, including any and all e-mail addresses, of Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them;

ix. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts, a full accounting of Defendants' sales history and listing history under such accounts, and Defendants' Financial Accounts associated with Defendants' User Accounts; and

x. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Baby Shark Marks and/or Baby Shark Works and/or marks or artwork that are confusingly or substantially similar to, identical to and constitute a counterfeiting and/or infringement of the Baby Shark

Marks and Baby Sharks Works.

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

    i. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers;

    ii. the identities, location and contact information, including any and all e-mail addresses of Defendants;

    iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

    iv. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Baby Shark Marks and/or Baby Shark

Works and/or marks or artwork that are confusingly or substantially similar to, identical to and constitute an infringement of the Baby Shark Marks and/or Baby Shark Works.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by one of the following means:

   a) delivery of: (i) PDF copies of this Order, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order to Defendants' e-mail addresses to be determined after having been identified by by Alibaba and/or AliExpress pursuant to Paragraph V(C); or

   b) delivery of a message to Defendants through the system for communications established by the Third Party Service Providers on their respective platforms, notifying Defendants that an action has been filed against them in this Court and providing a link to a secure website (such as NutStore or a large mail link created through Rmail.com) where each Defendant will be able to download PDF copies of this Order.

5. As sufficient cause has been shown, that such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

6. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed

by the following means:

   a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

   b) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AliPay.com Co., Ltd., Ant Financial Services will be able to download a PDF copy of this Order via electronic mail Mr. Di Zhang, Member of the Legal & Compliance Department – IP, at di.zd@alipay.com;

   c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba will be able to download a PDF copy of this Order via electronic mail to Chloe He, Alibaba Group at chloe.he@alibaba-inc.com;

   d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and Edward Tulin, counsel for Payoneer Inc., at Edward.Tulin@skadden.com; and

   e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to PingPong Global Solutions Inc.'s Legal Department legal@pingpongx.com.

7. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. The $1,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

9. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this 27th day of May, 2021, at 9a .m.
New York, New York

_Paul A. Crotty_
HON. PAUL A. CROTTY
USDJ

11